IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RON E. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-11-0861-HE |
| | ) | |
| SHERIFF BOBBY WHITTINGTON, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

In this case, plaintiff Ron Jones seeks damages for alleged constitutional violations stemming from his February 2010 arrest and prosecution for animal cruelty and related charges. He originally asserted claims against multiple defendants. Those against District Attorney Wampler and Horse Feathers Equine Rescue Inc. have been resolved either by order of the court or by stipulated dismissal. Plaintiff's claims against Bobby Whittington, the sheriff of Tillman County, remain for resolution. Whittington is sued in both his individual capacity and his official capacity as Tillman County Sheriff, the latter claim being essentially a suit against Tillman County. He asserts claims under 42 U.S.C. § 1983 for false arrest, excessive force, deprivation of due process, and vindictive prosecution.

Background

The background facts and circumstances are largely undisputed. On February 13, 2010, the Tillman County Sheriff's Department received a complaint that horses on plaintiff's property were not being cared for properly. Sheriff Whittington assigned Deputy Keith Hefner to investigate. Between February 13th and February 27th, Hefner visited

plaintiff's property on numerous occasions and admonished plaintiff to improve the animals' living conditions. Ultimately, Deputy Hefner sought a search and seizure warrant for the horses. A state judge issued the warrant on February 27, 2010, finding probable cause to believe the crime "Cruelty to Animals," 21 Okla. Stat. § 1685, had been committed.

On February 27, 2010, defendant accompanied Hefner to assist in the execution of the warrant and determined that he had probable cause at that time to arrest plaintiff for cruelty to animals. The circumstances of the arrest are disputed. Defendant contends the arrest was unremarkable and accomplished with a minimal amount of force. Plaintiff's testimony is that the sheriff violently slammed him into the side of his car, even though he was never told he was under arrest, "torqued" his arm in an extreme fashion causing injury, and handcuffed him so tightly that it was difficult to eventually get the cuffs off.

Plaintiff was charged with four felony counts of cruelty to animals, one misdemeanor count of failing to notify police of a concealed weapon by a licensee, and one misdemeanor count of obstructing an officer. The State also filed a motion for hearing on the forfeiture of the horses and setting a security bond for their care.

Following what the defendant asserts was a plea agreement with the State, both cases were dismissed. Some time after this case was filed, both the criminal and civil state cases were re-filed. The criminal case has since been dismissed by the state court on Double Jeopardy grounds. The civil forfeiture case is still pending.

## Discussion

Defendant Whittington has moved both for summary judgment and to stay further

proceedings in this court pending resolution of the state court proceedings. The latter motion seeks to invoke the abstention doctrine recognized in Younger v. Harris, 401 U.S. 37 (1971). Because the Younger doctrine, where it applies, is jurisdictional in nature, it must be resolved first. D.L. v. Unified School Dist. No. 497, 392 F.3d 1223, 1228-29 (10th Cir. 2004).

### a. Motion to Stay

The Younger doctrine, where applicable, requires a federal court to abstain from acting where a federal court judgment would interfere with an ongoing state proceeding. The doctrine is said to apply where these conditions are met: (1) there are ongoing state proceedings, (2) the state proceedings offer an adequate forum to hear the plaintiff's federal claims, and (3) the state proceedings implicate important state interests. Taylor v. Jaquez, 126 F.3d 1294, 1297 (10th Cir. 1997). The plaintiff's federal court claims are evaluated individually. *See* D.L. v. Unified School Dist. No. 497, 392 F.3d at 1229. Here, defendant urges that all three conditions necessary to abstention are present and that the case should be stayed. Plaintiff contends that none of the three are present.

Plaintiff argues the first element is not present because, at the time this suit was filed, there was no state proceeding pending. That is true in a technical sense, but ignores the substance of the somewhat extraordinary circumstances of this case. Here, both criminal and civil proceedings had been commenced in state court against Mr. Jones (or, as to the civil proceeding, his horses) prior to the filing of this case. However, as noted above, they were dismissed, in the state's view (and apparently that of the state court judge), on the basis of an oral plea agreement reached with Mr. Jones. According to defendant, that agreement was

to the effect that Mr. Jones would relinquish his interest in the horses involved and the state would dismiss all charges/proceedings and not seek reimbursement for the cost of the horses' care up to that point. In the state's view, that agreement was breached when Mr. Jones filed this federal lawsuit, premised in part on his continued ownership of the horses, causing the state to re-file the state cases. Mr. Jones challenges the motivation for the re-filing of the cases, but it is clear in any event that the originally filed and re-filed cases are, in substance, the same case and dispute.

Even if the original and re-filed state proceedings were not substantially the same, the court would not attach controlling significance to the sequence of the filings. While Younger originally attached controlling significance to the timing of the respective case filings, the Supreme Court has since retreated from that position. *See* 17B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, Federal Practice and Procedure §4253, at 52-57 (3d ed. 2007). It now appears to view a later-filed state proceeding as "pending" for purposes of the doctrine if it was filed before "any proceedings of substance on the merits" had taken place in the federal court. Hicks v. Miranda, 422 U.S. 332, 349 (1975). At the time the state civil forfeiture action was re-filed on October 4, 2011, there had been no substantive proceedings in this federal action. Indeed, there has been little, if any, attention given to the substantive merit of plaintiff's claims as to these defendants.[1]

---

[1]*The other defendants — District Attorney Wampler and Horse Feathers Equine Rescue Inc. — filed motions to dismiss which were addressed by the court, but this motion is the first substantive treatment of the claims against Sheriff Whittington or the county.*

In any event, the court concludes that the first condition necessary to application of the Younger doctrine — the existence of an ongoing state proceeding — is present here due to the pending civil forfeiture case.

The third element — that the state proceedings involve important state interests and policies — is also met. The State of Oklahoma has an important interest in advancing the interests protected by its criminal and other laws preventing abuse or neglect of animals.[2]

The more difficult question is whether the second condition is present here — the requirement that the state court proceeding provide an adequate forum to hear the claims raised in the federal complaint. Apparently as a part of this inquiry, the cases also evaluate the potential interference with the state case from a decision in the federal case. *See* J.B. v. Valdez, 186 F.3d 1280, 1291-92 (10th Cir. 1999).

As to at least some of the claims asserted here, there is a plausible basis for concluding that they could have been raised in the state proceeding. It is true that defendant Whittington is not a party in that case, but that is not dispositive as to the Younger analysis. There are some circumstances in which legally distinct parties may be so closely related that they should all be subject to the Younger considerations. Doran v. Salem Inn, Inc., 422 U.S. 922, 928 (1975). Where there is, in essence, only one claim involved, the legally distinct party in the federal proceeding may be viewed as the alter ego of the party in the state proceeding.

---

[2]*It appears the pending forfeiture proceeding, while civil, may be viewed as "in aid of" criminal statutes addressing the same or similar conduct.*

D.L. v. Unified School Dist. No. 497, 392 F.3d at 1230.[3] Here, the position of Whittington, the sheriff, is somewhat akin to that. It is, at least in part, his actions that are at issue in the state case. While the case was brought in the name of the state, he was the official who effected the seizure of the horses.

Plaintiff has not negatived the possibility that he could have raised his claims in the state case.[4] The state district court is a court of general jurisdiction. While the civil forfeiture proceeding involved here might be viewed as a sort of special proceeding, rather than a "case" in the traditional sense, neither party has pointed to any authority suggesting claims against the sheriff could not have been raised there or that state pleading or substantive rules would necessarily prevent it.[5]

The court is also mindful that the state case has progressed to the point where a hearing (arguably, the "trial") has occurred and that the parties are awaiting a disposition by the judge. That may preclude plaintiff now asserting claims there, though that is not clear. However, the question is the potential availability of a state remedy. Moreover, the potential

---

[3]*That suggestion of "alter ego" status is purely in the context of the Younger analysis. The court does not suggest "alter ego" liability attaches for other purposes.*

[4]*"The pertinent issue is whether appellees' constitutional claims could have been raised in the pending state proceedings." Moore v. Sims, 442 U.S. 415, 425 (1979) (emphasis added); see also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume the state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.").*

[5]*There is little or no case law interpreting the Oklahoma statute, 21 Okla. Stat. 1680.4(C), and the statute itself is ambiguous in various respects.*

for a decision by this court impacting the state determination, through principles of estoppel or otherwise, appears to exist as to at least some of plaintiff's claims. While not necessarily the identical inquiry, a determination here that probable cause existed for the arrest of plaintiff based on the condition of the horses at the time of arrest would perhaps control the state court's determination, based on collateral estoppel or similar principles. Even absent a binding impact, the possibility of inconsistent determinations exists.

While the question is close,[6] the court concludes the second Younger condition is also met.[7]

Plaintiff seeks to invoke certain exceptions to the Younger doctrine. Courts are not required to abstain or stay an action on Younger grounds in cases of proven harassment or prosecutions undertaken in bad faith, and in other extraordinary circumstances. Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah, 240 F.3d 871, 876 (10th Cir. 2001). Given the evidence as to the basis for re-filing as reflected in the documents filed by prosecutors in both the criminal and civil state cases, the court is unpersuaded that the exceptions are applicable here.

As noted above, the potential application of the Younger doctrine is analyzed on a

---

[6]*If there is a case providing a clear path through the maze of factors impacting this determination, the court has been unable to find it.*

[7]*The Court of Appeals has suggested that uncertainty as to this element may cut in favor of abstention: "While we find plaintiffs were engaged in an ongoing state proceeding, we are less certain about whether they could have adequately raised their federal statutory and constitutional claims in these state proceedings. This uncertainty, however, militates in favor of abstention." J.B. v. Valdez, 186 F.3d at 1292 (emphasis added).*

claim by claim basis. The above rationale for abstention plainly does not apply to plaintiff's claim for excess force. That claim is based purely on plaintiff's contention that Sheriff Whittington used unreasonable force in arresting him on February 27, 2010. The legality of the underlying arrest will not control the result as to the excess force claim. *See* Cortez v. McCauley, 478 F.3d 1108, 1126-27 (10th Cir. 2007). Further, there is no apparent way in which the resolution of the excess force claim by this court would interfere with, or impact in any way, the determinations to be made in the pending state proceeding.

The question then becomes how to proceed in light of the determination that Younger abstention is warranted as to some claims but not all. Where, as here, compensatory damages are the relief sought in the federal action, application of Younger ordinarily results in a stay of the federal proceedings, rather than their dismissal. D.L. v. Unified Sch. Dist. No. 497, 392 F.3d at 1228. So the next question is whether the entire case should be stayed, or only part of it. Since the abstention rationale and doctrine do not apply to the excess force claim, the excess force claim can potentially go forward.

Proceeding to trial on less than all of the claims effects a severance, causing, at least potentially, multiple trials. Concerns of judicial economy and cost and convenience to the parties militate against such a severance. But there are competing concerns here. This case has been pending for two years. Based on counsels' comments at the recent hearing, it may be months before a decision is rendered in the state proceeding. Plaintiff has suggested that, if he receives an adverse decision in the pending state proceeding, he will appeal it. An appeal potentially results in extensive further delay, deferring even longer the point at which

8

the stayed claims can move forward here. Further, while there is some overlap in the evidence that might be offered on the various claims, at least as to background circumstances, a jury's inquiry in the excess force case will be largely different from that with the other claims. In the circumstances existing here, on balance, there is no compelling reason to defer resolution of the excess force claim.

The court concludes defendant's motion to stay based on Younger should be granted as to plaintiff's false arrest, due process and vindictive prosecution claims, but denied as to the excess force claim. Further proceedings in this case will be stayed as to the three referenced claims, but will continue on the present schedule as to the excess force claim. The party's pretrial submissions required by the current scheduling order should be directed to the excess force claim only.

(b) Motion for Summary Judgment

As noted above, defendant has also filed a motion for summary judgment which must be addressed insofar as it relates to the unstayed excess force claim. As with the other claims, they are asserted both against Whittington personally and against the county. The standards applicable to summary judgment are familiar. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013)

(citation omitted).  "Put differently, the question . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Becker v. Bateman, 709 F.3d 1019, 1022 (10th Cir. 2013) (citations and internal quotation marks omitted).  The facts and any reasonable inferences that might be drawn from them must be viewed in the light most favorable to the nonmoving party.  *See id.*

Sheriff Whittington asserts he is entitled to judgment on the individual capacity claims against him by reason of qualified immunity.  Qualified immunity involves a "two-step sequence."  Pearson v. Callahan, 555 U.S. 223 (2009).  "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."  Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009).  Plaintiff must satisfy both steps to defeat qualified immunity.

The question of whether plaintiff can show a constitutional violation based on excess force is governed by the Fourth Amendment's "objective reasonableness" standard.  Morris v. Noe, 672 F.3d 1185, 1195 (10th Cir. 2012).  The "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id*. (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  In making that determination, courts consider and balance three factors: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or

attempting to flee." *Id*. (citing Graham, 490 U.S. at 396).

Viewing the evidence in the light most favorable to plaintiff, as it must at this stage, the court concludes plaintiff has shown a constitutional violation. Plaintiff's testimony is that when he arrived on his property on February 27, 2010, the sheriff told him he either had to help him load the horses or leave. Plaintiff says he refused to help and turned to leave, bending over to pick his cane up off the ground. Plaintiff's testimony as to what happened next is as follows:

> On my arising, I was blind-sided when Bobby Whittington lunged at me, grabbing my right arm, twisting it behind my back, driving me, pile-driving me into the side of my PT Cruiser and kept torquing and torquing and torquing on my arm, and I finally got to a point where I said "Stop. You're hurting me. You're hurting me excruciatingly," at which point, Bobby Whittington said "Good. I'm glad. I wish I could hurt you worse." [Doc. #98-25 at 283].

He went on to testify that he was slammed into his vehicle hard enough to "dent the metal on [the] vehicle." *Id*. at 286. He also testified that was "savagely" handcuffed, in that he was cuffed by Whittington so tightly that a deputy later had difficulty removing the cuffs. *Id*. at 288. Plaintiff's evidence is to the effect that he suffered permanent injuries to his shoulder and neck due to the force used in the arrest. Defendant denies this version of the arrest but, as noted above, the court is obliged to view the evidence in the light most favorable to plaintiff in evaluating the Graham factors.

As to the first factor — the severity of the crime at issue — it is true that cruelty to animals is a felony under Oklahoma law. However, it is also a non-violent felony, reducing the severity of the crime to some extent and suggesting a lesser level of force might be

reasonable in connection with an arrest for it. As to the second element, there appears to have been no indication that plaintiff represented an immediate threat to the safety of the officers or others.[8] As to the third element — whether plaintiff was resisting arrest or attempting to flee — plaintiff's testimony is that he was not told he was under arrest and that he was simply leaving — an option he says the sheriff gave him. *See* Casey v. City of Fed. Heights, 509 F.3d 1278, 1282 (10th Cir. 2007) (an individual who was never told he was under arrest was not *actively* resisting arrest).

Crediting plaintiff's version of what occurred, he has shown a constitutional violation. "The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Lundstrom v. Romero, 616 F.3d 1108, 1126 (10th Cir. 2010) (quoting Graham, 490 U.S. at 396). However, under the facts alleged by plaintiff, the amount of force used by the sheriff in twisting plaintiff's arm behind his back and "pile-driving" him into the side of his vehicle was not objectively reasonable where plaintiff was accused of a non-violent crime, was not posing an immediate threat to the officers, and was not resisting arrest. *See* Morris, 672 F.3d at 1195-96 (a forceful takedown was not objectively reasonable where plaintiff was arrested for assault—a misdemeanor under state law—did not pose a threat to officers, and was not resisting arrest, as he was backing toward the officers when they grabbed him from behind).

The court also concludes that plaintiff has shown the constitutional right in question

---

[8]*Plaintiff had a gun in his car, but there is no indication Whittington was aware of it at the time the arrest was made.*

to have been clearly established at the time of the incident. "A constitutional right is clearly established when, at the time of the alleged violation, the contours of the right were sufficiently clear that a reasonable official would understand that his actions violate that right." Swanson v. Town of Mountain View, 577 F.3d 1196, 1200 (10th Cir. 2009) (citation omitted). A "plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant violated it." *Id.* (citation omitted). While a plaintiff need not identify a case with the exact same factual circumstances, the plaintiff must show authority making it "apparent that in the light of pre-existing law a reasonable official would have known that the conduct in question violated the constitutional right at issue." *Id.* (internal quotation marks and ellipsis omitted).

Here, crediting plaintiff's version of the disputed facts, a reasonable officer would have known conduct like that alleged to have been committed by the sheriff was unjustified. There were "no substantial grounds for a reasonable officer to believe there was legitimate justification for acting as he did." Lundstrom, 616 F.3d at 1127 (citing Buck v. City of Albuquerque, 549 F.3d 1269, 1291 (10th Cir. 2008)); *see also* Morris, 672 F.3d at 1197-98 (holding that it was clearly established in light of Graham that the force used in an initial takedown was excessive when "the first Graham factor only marginally supported using force against [the plaintiff], and the second two factors weighed heavily against it"). Apart from a passing reference to the issue in his brief, defendant makes no serious argument to the contrary. Plaintiff's right to be free from a forceful takedown under the circumstances assumed here was clearly established under Graham.

13

As plaintiff has sufficiently shown both a constitutional violation and that the law was clearly established, defendant Whittington is not entitled to summary judgment in his individual capacity.

As to the claim against Whittington in his official capacity — the claim against the county — summary judgment must also be denied. Because the sheriff is the final policymaker for the county as to its law enforcement activities, his actions essentially become the actions of the county. *See* Moss v. Kopp, 559 F.3d 1155, 1168-69 (10th Cir. 2009) ("[A] municipality can be liable under § 1983 if the 'final policymaker' takes the unconstitutional action." (citation omitted)); Reid v. Hamby, 124 F.3d 217, at *5 (10th Cir. 1997) (unpublished) ("Oklahoma sheriffs are final policymakers concerning law enforcement activities in their counties." (citing Hollingsworth v. Hill, 110 F.3d 733, 743 (10th Cir.1997)). As discussed above, a sufficient showing has been made that a constitutional violation was committed.

Accordingly, defendant's motion for summary judgment as to the excess force claim must be denied as to both the individual and official capacity claims.

## Conclusion

For the reasons stated, defendants' motion to stay [Doc. #106] is **GRANTED** as to plaintiff's claims for false arrest, deprivation of due process, and vindictive prosecution. Proceedings as to those claims in this court are **STAYED** pending resolution of the state proceeding or further order of this court. The stay motion is **DENIED** as to plaintiff's excess force claim, which shall go forward pursuant to the existing scheduling order. Defendant

14

Whittington's summary judgment motion [Doc. #93] is **DENIED** as to the excess force claim only and **STRICKEN** as to all other claims.

Finally, the court encourages both parties to devote their best efforts to exploring the possibility of settlement at the August 23 settlement conference with Judge Erwin. As noted above, this case has already gone on for a long time, at considerable expense and inconvenience to the parties. The time to decision in the state proceeding is unknown, both in terms of the trial judge's determination and the time necessary for any appeal of that determination. This case appears to be one in which all parties have a strong interest in an early resolution, if agreement can be reached.

**IT IS SO ORDERED**.

Dated this 21st day of August, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE